**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Leah Raines, | ) | CASE NO. 5:12 CV 653 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendant. | ) | |

### INTRODUCTION

This matter is before the Court upon the Report and Recommendation ("R&R") of
Magistrate Judge George J. Limbert (Doc. 17) recommending that the decision of the
Commissioner be reversed and this matter remanded for further proceedings.  This is a social
security appeal.   The government filed objections to the R&R.  For the reasons that follow, the
R&R is ACCEPTED, albeit on slightly different grounds.  The decision of the defendant is
REVERSED and this matter is REMANDED to defendant for further proceedings consistent
with this Opinion.

### STANDARD OF REVIEW

1

Federal Rule of Civil Procedure 72, which governs the matter herein inasmuch as timely objections have been made to the Report and Recommendation, provides in part:

> **(b) Dispositive Motions and Prisoner Petitions.**
>
> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

As stated in the Advisory Committee Notes, "The term 'de novo' signifies the magistrate's findings are not protected by the clearly erroneous doctrine, but does not indicate that a second evidentiary hearing is required." *citing United States v. Raddatz*, 447 U.S. 667 (1980).

## ANALYSIS

The Magistrate Judge recommends that the Court reject the Administrative Law Judge's ("ALJ") determination because bias on the part of the ALJ, coupled with the ALJ's analysis of Dr. Steiger's opinion, demonstrate that defendant's determination is not supported by substantial evidence.

The government objects to the R&R on one ground.  According to the government, the ALJ properly determined that plaintiff is not disabled.  The government argues that the ALJ's determination that Dr. Steiger's opinion is not entitled to "great weight" is properly supported by the record.  During this Court's review of the R&R and the underlying record, the Court became concerned about the issue of bias on the part of the ALJ and requested additional briefing from the parties.  That briefing is now complete.

Upon review, the Court finds that the existence of bias on the part of the ALJ requires that this matter be reversed and remanded to defendant for further proceedings.

2

...[T]his Court must begin with the presumption that policymakers with decisionmaking power exercise their power with honesty and integrity.  The burden of overcoming the presumption of impartiality rests on the party making the assertion [of bias], and the presumption can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present.

*Fluker v. Commission of Social Security*, 2013 WL 1122447 (E.D. Mich. March 18, 2013)(internal citations and quotations omitted).  For alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *O'Neill v. Commission of Social Security*, 2013 WL 1436648 (W.D. Mich. April 9, 2013)(*citing United States v. Grinnell Corp*., 384 U.S. 563, 583 (1966)).

In this case, plaintiff alleges severe and disabling mental impairments that stem from a brutal attack she suffered at work.  During the administrative hearing, the ALJ explained in great detail that, he too, suffered a severe attack during a home invasion.   It is clear from a review of the record that the ALJ blames plaintiff for being unable to "get over" the attack.   For example, the ALJ questioned plaintiff as follows:

ALJ: What is your plan to get over this?

PL: Well, I'm seeking counseling, and I've actually started seeing even a, a second counselor who is supposed to specialize more in the post-traumatic stress disorder....

ALJ: Firstly, I think you should realize that you are very lucky.  And before I was doing this I was a district attorney in Atlanta.  And if you had been one of the victims of one of the cases I was prosecuting, you would have been considered one of our luckiest victims. At your age this is something that you've– I think you're going to have to try a little harder to get past and to resume a normal, happy and healthy life, do you agree?

3

The ALJ also acknowledged that his questions were intended not to learn the nature of plaintiff's symptoms, but instead to show plaintiff that she simply needs to adjust her attitude.

ALJ: Are you going to consider going to a mall?

PL: I'd like to.

ALJ: What about a comedy show?

PL: I don't like crowds, especially I don't like to be around other people.

ALJ: Do you have friends, friends from–

PL: No, I have no friends.  I have my brother, my sister, and all, my parents, that's the only people I associate with.

ALJ: Okay.  We're focusing on the negatives again, whereas *my questions are designed to focus on the positives*.  Did you have friends in high school?

PL: Yes.

\*\*\*

ALJ: What happened to the vehicle.

PL: [explaining about vehicle].

ALJ: Oh, are you going to tell me something else negative?

PL:–from my house, yet.

ALJ: Okay.  Then–Okay.

PL: But that's why I'm not–I wanted you to understand why I can't drive anymore, because–

ALJ: But have you noticed what's going on here?  *Every question I asked you is designed to elicit a happy response*.  And no matter how happy the question may start off, you turn

4

in right back around and come to something extremely, or extraordinarily negative.  So

let's–

The remaining "questioning" undertaken by the ALJ was not questioning at all.  Rather,

the ALJ attempted to instruct plaintiff on how to deal with the aftermath of her attack:

ALJ:    Do you have cable?

PL:  Yes.

ALJ:    What about Netflix?

PL: What's Netflix?

ALJ: You can order a happy movie and watch it at home.  Or do you have a phone?

Okay.  We just talked about your friends from high school.  We could look some of them

up in the phone book, and we could call them over and maybe order a pizza, and play

card games.  There's board games.  There are ways for you to even start off having fun

inside your home before you try to branch out and start having fun otherwise.

PL: I would be embarrassed for someone to see me like this, though.

ALJ: But you look like a normal person.  It's not like you have two heads, so there's no

reason to be embarrassed.  Counsel, do you have any questions?

Even more troubling, however, is the ALJ's apparent view that a receipt of benefits

would only serve to harm plaintiff's recovery:

ALJ: Now let's say hypothetically, if you were obtaining Disability, do you think that

might further cripple you as far as not allowing you to actually live a happy, healthy life?

What do you think?

PL: No.

5

ALJ: How would that help you to improve your quality of life?

PL: Well, first of all, right now I'm only on Workman's Comp. And with the Disability, I would be able to earn income, and that's a lot of my problem...I rely so much on my dad....

ALJ: Would it not also help you to keep yourself in a mental prison?

PL: I would hope not.

ALJ: That's why I was asking the questions earlier about you trying harder to improve your quality of life.

Even from a cursory review of the transcript, it is readily apparent that the ALJ's own personal experience and his efforts to recover from the home invasion, resulted in his inability to review plaintiff's case in an unbiased manner.[1] He clearly believed that plaintiff's mental impairments could be improved if she changed her attitude and simply made more of an effort to recover. In addition, as he acknowledged, his questions were designed, not to ascertain the extent of plaintiff's symptoms but, to "elicit happy responses." Moreover, it appears that the ALJ believed that the receipt of benefits would hinder plaintiff's recovery. In all, the Court finds that the ALJ's own personal experience, which he thoroughly described during the hearing itself, together with the inappropriate and skewed nature of the questioning, constitutes "convincing evidence that a risk of actual bias or prejudgement" was present at the hearing.

Accordingly, because the Court cannot say that an immediate award of benefits is warranted, the Court finds that remand to a different ALJ, who will be fair and impartial, is

---

[1] The Court notes that the Appeals Council referred this matter to the Division of Quality Service for further investigation. The results of the investigation are unknown.

6

warranted.

**CONCLUSION**

For the foregoing reasons, the Report and Recommendation ("R&R") of Magistrate

Judge George J. Limbert (Doc. 17) is ACCEPTED, albeit on slightly different grounds.  The

decision of the defendant is REVERSED and this matter is REMANDED to defendant for

further proceedings consistent with this Opinion.

IT IS SO ORDERED.


                                        /s/Patricia A. Gaughan
                                        PATRICIA A. GAUGHAN
Date:    6/20/13               United States District Judge

7